Matthew Wessler May it please the Court, Matthew Wessler for the appellants, and with the Court's permission I'd like to reserve three minutes for rebuttal. The plaintiffs in this case claim that Intel's fiduciaries breached their duty of prudence under ERISA by allocating to the company's suite of defined contribution benefit plans massive amounts of hedge fund and private equity investments. Although the complaint specifically alleged that this hedge fund allocation model for hedge funds was unprecedented, that is, that no other defined contribution plan, fiduciary, or professional investment manager had ever done anything remotely similar to what Intel's fiduciaries had done, the District Court dismissed these claims by holding that the plaintiffs had not sufficiently identified other plans or funds that could be compared to Intel's. I have, and this is a clarification required by ignorance I guess, but it's confusing in the briefs and in the District Court opinions what is meant by funds. It seems that term is being used rather loosely. I mean this was a 401k plan and a defined contribution plan. And so those are plans. You're not calling that the funds. Now within the plans, Intel puts together funds that people can buy, although in the defined contribution plan they don't have a choice. Correct, Your Honor. They don't buy the funds, but what happens is that contributions are made to Intel's plan, and then Intel fiduciaries invest those contributions in various investments. But in the 401k, I presume they do have choices as to which funds. Is that right? Well, they do have choices, but here all of the challenged funds within the 401k are the defaulted funds, which means that the participants are defaulted into Intel's target date funds that include this hedge fund or private equity allocation strategy. And so the fund is a set of investments. Correct. That's correct. That they choose to make. That the fiduciaries bundle together. Yes, the fiduciaries created these. These are not off-the-shelf Vanguard or T. Rowe Price funds. They are funds that the Intel fiduciaries themselves custom-built to create an allocation strategy that included hedge funds and private equity as part of the investment strategy that the fiduciaries then put the participants' money in. I guess what I'm trying to understand about the use of the term funds, is there something other than the set of investments that was made for the plan? Is it some subset of the investments that are made for the plans that's called a fund? So as an example, the 401k was made up of a suite of target date funds. They're called target date funds, and they have a range of different target dates, and when you want to retire, you're defaulted into one or the other. So if your plan is to retire in 2055, you would most likely be put into the target date fund, TDF 2055. If you were retiring 10 years earlier, it would be the 2045 fund. But the basic theory of imprudence here isn't so much a fund-by-fund theory of imprudence. It's that for all of these funds, Intel allocated hedge funds as part of the investment strategy, and that was unprecedented. That is, you can't find another target date fund anywhere, whether it's an off-the-shelf version of a target date fund that's the same vintage year or anything else that allocated the same kinds of investments into the fund. So your argument is that just using hedge funds and these private investments, that in itself is per se a violation? No, that's not your argument. So your argument is that that was wrong because you say over and over again that it has higher risk, lower return. Those are comparative terms. Those are comparative terms. I mean, there's not some idealized idea of what the proper amount of risk and the proper amount of... And so your first amended complaint is just full of other funds that you're saying did better. So it seems to me the gist of your argument, that Gravelman, the crux of your argument is, and I understand your argument, that this is unprecedented. So it's not correct to have Judge Koh's comparative approach is not correct in this instance. But it's not Judge Koh's comparative approach, it seems to me. The struggle I'm having is it's your comparative approach, and I don't even know how you could not have a comparative approach because the argument has to be that you're doing worse than something. And so how can you... If it's not a per se, I suppose you could have a per se challenge. You should not invest people's money in Las Vegas, at the tables in Las Vegas. But if it's not that, then how do you get away from it being comparative? Benchmark, comparative. Benchmark is just an aspect of a comparison, right? How do you get away from that? So I don't think you can entirely get away from it. And I don't think our... What I think went wrong in front of the district court wasn't that there was somehow... It was completely inappropriate to ask about comparators. And you're right, the First Amendment complaint contains a number of comparators. I think the problem was this idea of a meaningful benchmark that Judge Koh adopted and attempted to evaluate at the pleading stage. What needs to happen in these cases is if the complaint comes forward with legitimate, valid comparators, as the First Amendment complaint did here, it went through, I think in painstaking detail, other examples of similar TDF funds, target date funds. Legitimate, comparative, and other similar. But that's exactly what Judge Koh said. It wasn't that she said you couldn't do that. She said that you didn't do that. And I feel like your briefing was a little misleading on that. Your briefing treated her like she had said that you couldn't do it, but that's not... She had said that you just didn't do it. And I went back and looked, and it does seem pretty light on explaining why these funds that you listed had the same risk-adverse approach that Intel was trying to... 2008, whatever, maybe I'm wrong, but got scared of the debt market downturn and so took a very risk-cautious approach. Judge Koh said you didn't show that these funds had a similar approach. I think you're right. That is what she said. But I think the problem was that she was attempting to make those findings at the pleading stage. I do think the complaint at multiple places compared Intel's approach to the approach taken by other competitor funds. And that includes funds that Intel itself identified as appropriate benchmarks. That included funds that adopted, at some level, the same investment strategy. As an example... The N circuit case, and I think that's a very recent one that we got maybe in a rule between a letter, the Maltney? Matney. That involves, among other comparators, the CITs or something like that. And that seemed the closest. Even there, they said you haven't really shown that they're the same. I might have said CITs. I'm not an expert on this, but CITs are different than your typical kind of fund. So it does seem like at least one other circuit has required at the pleading stage, even for different kind of investments, that you make some sort of showing that they are actually a comparator, a proper comparator. Right. So I do want to draw, I think it's an important distinction to draw, between a case like Matney where the 8th Circuit's trio of cases, Matusik and Miners and Davis, which all involved a different kind of imprudence claim. In those cases, the plaintiffs were not arguing that the investment strategy itself was unprecedented in some way. Instead, they were arguing an imprudence claim based on an investment-by-investment comparison. And I think, in our view, the statute doesn't require at the pleading stage the type of meaningful benchmarks, pleading requirement, that the 8th Circuit and the 10th Circuit have adopted. You've now said a couple times that the strategy here was unprecedented. And I guess I'm, and that which dovetails with the fairly extensive discussion in your briefing of all the reasons that, in your view, hedge funds and private equity make bad investments. And I'm struggling to see how what you're saying really isn't a claim that just per se, nobody should have invested in these. Well, it's not a per se claim because we identified in the complaint several examples of other funds that had some alternative investments, potentially including hedge funds, just at a much, much lower percentage. And this case is not about whether that particular fund is imprudent. Instead, the question is, is allocating 30 to 50 percent of the fund into hedge funds itself imprudent? Does that depend on this being an ERISA plan or a retirement plan? Yes. That's the part that I find very unclear and focused upon. I'm not at all sure why your argument isn't, but I don't think it is, that what should be compared in this circumstance is across similar retirement plans rather than across funds, including funds for sale to the public, who can make choices about what kind of risk they want to take. Right. Well, we do think the appropriate comparison, if there's going to be a comparison, can be done at the retirement plan level. And we identified in the complaint other similarly sized plans, over $10 billion, that had no investments in the kind of hedge fund or private equity that Intel's did. So it is about the retirement plan. But the point, just to respond to your earlier question, is that this complaint in the theory here doesn't take any position on whether lower percentage allocations in hedge funds would itself be improved or not. It just says at this level there were no other plans doing similar things with retirees' monies and defined contribution plans that had invested anything remotely close to this. But, I mean, I think Intel's answer to that is to say we had an unusual objective, right? Based on our experience in 2008, we thought we wanted to be very, very conservative in terms of avoiding the risk of a down year. And I think Judge Koh thought that you hadn't explained why the benchmarks, just because they may also be retirement funds or even target date retirement funds, they didn't necessarily share that objective. And so they're not a relevant comparison, right? Right. A couple of responses to that. The first is Intel is free to make that argument. It would be more appropriate for it to make it on the merits after the pleading stage. I think the problem here is we are only at the Rule 12 stage, where in our complaint our allegations are entitled to be taken as true and we're entitled to all the inferences that should be drawn in our favor. And those inferences include the fact that we have alleged that using hedge funds in the way that Intel did didn't serve the objectives that it claimed it was trying to achieve, including risk mitigation. If you look at its brief on page 8, it says one of the core objectives, the reason we did this, was to mitigate risk. The way we did that was to increase the diversification of our fund. We wanted equities. We wanted bonds. We wanted hedge funds. But in our complaint, we alleged and backed it up with specific factual allegations that hedge funds don't increase diversification in any way because they're highly correlated with equities itself and they're not in and of themselves an asset class. And so those allegations were not credited by Judge Koh. But at this stage in the proceeding, they should have been, and we were entitled to those inferences. If I can just make one more point, though, Judge Miller, to your question, if it's in fact true that a company or fiduciaries can defend at the pleading stage with the argument that, oh, well, we were trying to tack left when everybody else was tacking right, and so we did this unprecedented thing, it would mean you would be exempting from the duty of prudent standard all sorts of potentially brazen, imprudent investment efforts. A company could say we want downside protection, and so what we're going to do is invest a third of participants' money in GameStop. It's devoid of instances of them saying they were taking a more risk-adverse tack. It's not like they just presented that for this litigation. Like they're just making this as a lawyer's argument. I think would you agree that there is some evidence that they were telling people that's the reason we're doing this? Now, you disagree that it was a prudent way to do it, but you don't think they just came up with this argument? No, that's not my point. My point is only just that if, in fact, it were at the pleading stage enough, an absolute defense to an imprudence claim by pointing to, you know, a statement in one of the fun fact sheets that you're attempting to achieve diversification, it would insulate a whole range of extreme potentially imprudent investment decisions that fiduciaries would make because it would mean you couldn't, by definition, come up with a comparator that would meet this meaningful benchmark test. One question before, because I want to hear, this may influence the other side. Are you or are you not challenging that they should not, that it was imprudent for them to attempt to take a more risk-adverse strategy? Is that, you know, aside from what they did, are you challenging that decision? No, we're not. The decision, no. I didn't think so, but I wanted to make sure. You seem to be challenging that, in fact, that these investments actually were more risk-adverse. That's correct. That is exactly the challenge here, Your Honor, yes. You do, and a global legal argument that the statute essentially doesn't admit or at least require comparisons in every instance. Correct. But there is something implicit in the statute. The prudent man standard seems to, or for in-person standard, does seem to be somewhat inherently comparative, is it not? I agree with that. I think there is, in some sense, a comparative component built into the prudent person standard. What is not there is a heightened pleading standard that, in every case, you must come forward with this difficult-to-define, meaningful benchmark criteria. And I realize that I'm out of time. If I could just briefly answer Judge Berzon's question. Where you have, for instance, other evidence of imprudence, external reporting, investment professionals critiquing the investment strategy, the need to come forward with comparators is reduced because you have other factual evidence you can rely on to plausibly show that the fiduciary's investment decisions were imprudent in some way that would violate the prudent person standard under ERISA. Thank you, Your Honor. Thank you. And we took you over your time, but we'll give you two minutes. Ms. Lund? May it please the Court? Julianne Lund on behalf of the defendants. We've just heard now from plaintiffs that two of the arguments that they presented below, first, that there is something inherently wrong with an allocation to nontraditional assets, such as hedge funds and private equity, and second, that there is something inherently wrong with a strategy that seeks to mitigate risk rather than maximize returns, are no longer before this Court. As I heard Mr. Wessler respond to the Court's question— On the second point, I don't think he ever made that argument. My understanding was that he was— that they were just contesting the notion that this was actually minimizing risk. Your Honor, I would disagree. If you look at Judge Koh's decision below, and I direct you to ER 30, she specifically addresses the arguments that plaintiffs made in response to our motion to dismiss, where they said the reason that we have chosen comparators that pursue different investment strategies is because we believe that the risk mitigation strategy is itself imprudent. And if you look at paragraph 217 of their complaint, they said that the risk mitigation strategy, quote, gave up the long-term benefit of investing in equity, which delivers superior returns. And they pointed specifically to that allegation in their opposition to the motion to dismiss below in order to argue that it was appropriate for them to compare the Intel funds with their risk mitigation strategy against retail funds from vendors such as Vanguard and Fidelity, which have an expressly return-maximizing approach. And I think that Your Honor has put your finger exactly on the issue here in terms of how do we apply Iqbal Twombly to allegations of imprudence, and that is that when you look to how ERISA defines prudence, it is expressly comparative. It says you examine how a reasonable person would act in the conduct of an enterprise of a like character with like aims. And that means at a minimum that you have to start with a fund that has a like aim. Let me go back to what I was asking before, though. It does seem to me somewhat strange in the ERISA context to be looking at funds within the plan rather than the plan. Or at least to be comparing funds other than the funds that are created by plans and going outside to retail funds. Because those are very different in their function to begin with, in that they are being, as long as there is full disclosure, they are being sold to consumers who can make choices as to what kind of risks they want to take or what kinds of, and so on. So to go outside the context of ERISA plans seems to me to be inappropriate in this context. I agree, Your Honor. I think that we are only focusing on funds that would be used in an ERISA plan. Just to clarify, as Mr. Wessler indicated, these were the default investment alternatives, which means where a plan participant did not make a different selection, they were placed into these funds. But they did, in fact, have access to a whole raft of alternative investments. For example, if they didn't want to be in the Intel TDFs, which were custom-designed TDFs that took this risk mitigation approach, they could choose a number of funds, such as a balanced fund, that were available through the Intel plan, or they could access a host of retail funds. Well, as to the 401K, but not as to the retirement fund. Your Honor, the facts are a little more complicated. I know the retirement fund. As of January 1, 2015, all plan participants were able to choose any fund, even as to the retirement plan, not just the 401K plan. Before that date, plan participants who were over the age of 50 had access to a variety of plans. Under the age of 50, they were limited to the global, the GDF plan. Can I ask, in your view, what would they need to do to state a claim here? And specifically, if they said, you know, we went out and we found some other companies that offer funds that say that they're trying to minimize, you know, downside risk in a bad year. But they did it. They used a different strategy, and it did much better. Would that be enough? I mean, because they'd have identified something with a similar aim, but better results? That is absolutely the baseline where you start. We look at whether something has the same aims, the same risks, and the same potential rewards. So here, for example, plaintiffs have alleged that the hedge funds that were used in the Intel funds had a bond-like volatility. They could, consistent with that allegation, have found a fund that essentially swaps out hedge funds in favor of simple bond funds. And they then could have taken volatility, which is a standard measure of risk, to see whether the fund that they had chosen that used only traditional assets, stocks and bonds, actually had the same level of volatility as the Intel funds. And then they could have said, this actually has superior returns. Is it your position that these kinds of comparisons are necessary in every instance with regard to the fiduciary duty standard under ERISA? It seems, well, just to expand on that a bit, I mean, there's something uncomfortable about the notion that the fiduciaries get to define their goals and that those can't be challenged. I agree, Your Honor, and that is absolutely not our position. Here, it really is a question, again, of looking to Iqbal Twombly, where the plaintiff is the master of his complaint. How has he chosen to plead it? Here, the plaintiffs chose to plead their complaint based on comparators. If you look at their allegations of imprudence, counts one and two, in the amended consolidated complaint, they specifically say you can infer that the fiduciaries here acted imprudently because they did not choose other funds that could have performed the same task. Well, that's because they were told they had to allege it that way, right? I'm sorry, Your Honor? They were told they had to allege it that way. No, that's not correct, Your Honor. If you look actually, and this case actually reaches all the way back to 2015, when one of the two named plaintiffs, Mr. Salema, first filed the complaint. Since that first complaint and through each subsequent complaint, they have always expressly relied on comparisons to other funds. The only difference, by the time we got to the final amended consolidated complaint, is that Judge Koh expressly told them what was wrong with their consolidated complaint and how to fix it rather than do that. But their comparison was at a different level of generality. In other words, their comparison was in the determination of, as I understand it, of the allocation and not in the details of whether the allocation. It's your position that that is an impermissible way to plead the complaint and that they can't say that other plans do not use funds with these kinds of investments and that these kinds of investments, these types of investments, not particular investments, have inherent problems. And therefore, there's a breach of fiduciary duty. Or at least at the percentages that they did this, they have inherent problems. That's their claim. And your position is they can't plead it that way. No, that's not entirely correct, Your Honor. So our position is that if their claim is simply that the Intel funds diverged from the standard asset allocation used by other fund managers, that absolutely does not— Other plans. I'm really concerned with the use of the term fund and the use of the term plans. They're not the same. They seem to be operating at the plan level, not at the fund level. Your Honor, as I understand Plaintiff's complaint, they have always operated at the fund level. So just to clarify, there are two, as you said, two ERISA plans here. They are both defined contribution plans. One is the 401k plan and one is the retirement plan. Within those plans, there are two suites of funds that plan participants can choose or be defaulted into, which the plaintiffs have challenged. The global diversified fund, which is generally a balanced fund in that its allocation does not change over time, and the Intel target date funds, which have a glide path that moves from a more risky approach to a more conservative approach over time. Those are the two funds that the plaintiffs have challenged. And within that challenge, as I understand the argument, they are specifically challenging the asset allocation. Now, the problem with the way that they have pled that challenge in their complaint is that ERISA has adopted modern portfolio theory. That holds that risk has to be measured across a fund as a whole, not based on challenges to individual assets within the fund or individual asset classes within the fund. And here, if you look at plaintiffs' own allegations, they make it clear that, as a whole, the Intel funds were conservative, not risky. In fact, plaintiff's central complaint is that, in hindsight, the Intel funds should have accepted the higher risk of an equity-heavy portfolio in order to capture the higher returns of the bull market. I thought a great deal of their concern is about the fee structure of hedge funds and private equity funds. That's correct, Your Honor. They have challenged the fee structure, but, again, that has to be based on a comparison of like to like, apples to apples, looking, again, at the standard of prudence under ERISA 404A, a fund with like aims. And just as every circuit court that has looked at the question of whether you can compare actively managed funds to passively managed funds has said that is not a proper comparison. It's not apples to apples. That's the part I don't understand. Why can't somebody say the problem here is that they are using actively managed funds, whereas they should be using passively managed funds, because passively managed funds are cheaper, are less expensive, and have lower fees? Why wouldn't that be a – it might lose, but why isn't that a valid claim under the prudent person law? Well, the reason, I think, is because the Supreme Court last year in Hughes said specifically that when assessing the plausibility of allegations of imprudence, courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise. Essentially, what ERISA says is there is no one fixed path that all fiduciaries have to use. Rather, fiduciaries have to exercise their reasonable judgment based on the particulars of the fund or the plan that they are overseeing. And so it could be that for some fiduciaries who don't have the skills to manage an actively managed fund or who prefer the simplicity of a passively managed fund, that might be the appropriate choice for their plan. But that does not mean that it is imprudent to have an actively managed fund, and you cannot simply compare the two and say because the passively managed fund is less expensive, therefore it is more prudent. In fact, both this court in the Wright case and the Supreme Court in Gobeil have held that ERISA does not require any fixed level of benefits, and you do not have to choose to maximize returns. Rather, it is permissible to seek a different strategy, such as one that uses actively managed funds, as the Intel plans did here, in order to achieve a broad diversification in order to mitigate risk. Even assuming you were going to make that argument and try to compare the two, you would still have to show that what you were comparing was apples to apples, except for the variable that you are trying to show, which is active versus passive. But you have to show that your active fund and your passive fund had similar risk profiles and other things, I assume. If you were allowed to make that argument, it still is a comparative argument, and there would still be sort of a benchmark aspect inherent in that, I think. Is that sound right? I agree, Your Honor. There is still a comparative aspect in that, but I guess I think it's important to take a step back and think about what is the concept of prudence writ large. It is not that we are seeking some platonic ideal of what is the best investment for all plans for all plan participants. No, I think I understand. I think that may be possibly what might be the frustrating thing about this that maybe Judge Prezant was alluding to, which is, in some ways, all of this is sort of beating around the – it is very difficult to challenge prudence, the fiduciary prudence directly, because you don't have that information normally. So you sort of are trying to prove it through circumstantial evidence, but when you are trying to – I mean, the cases talk about this, right? The original Eighth Circuit case talks about that. And so it is a blunt – it is not completely satisfying, but it is the way that we do it, it seems like. And I don't know what other way you could do it other than point out that they had some evidence of some meeting where they said let's put money in our own pockets and not in their pockets or something. You're exactly right, Your Honor. It's well settled that you can plead imprudence through an inference of imprudence based on circumstantial evidence. And as the Sixth Circuit said in Common Spirit, one of the pieces of evidence that you can use to do that is to look to a meaningful benchmark and say here is a fund that is comparable in terms of its aims, its risks, and its potential rewards, and yet it has this additional feature that would have made it preferable for the fund to select it. And the fact that the fiduciaries did not select it renders it imprudent. How is the plaintiff at the pleading stage supposed to find out what the aims, strategies, and so on are, the criteria that you say are applicable, and then find other funds that have the same ones? Is there some obligation on the fund or on the fiduciaries to articulate those? And do we take them at their word when they articulate them? So, Your Honor, under ERISA there are mandatory plan disclosures that have to be provided to all plan participants. Okay. But in addition to that, in the particular instance here, the intel funds had available a website that every plan participant could access 24-7, 365 days a year, where they could get simple sheets that were called fund fact sheets, essentially summary prospectuses that detailed the precise allocation of the assets, the cost of the fund, the return of the fund over time, that laid out the strategy of the fund, and that detailed what the- What do you mean by laid out the strategy? It said our strategy is X? Exactly. And so, for example, with the Global Diversified Fund, it said our goal is to achieve a 5% return after taxes annually. And then you could look at the performance and see that they were achieving it. With the TDFs, they explained about the glide path, and they included a detailed explanation of the composite benchmark against which they were measuring the performance of the TDF. There were also text descriptions that talked about what was happening in the market more broadly and how the intel TDFs fit into that. And that is where the disclosures were made that said, we specifically have chosen a low volatility risk mitigation approach. And what that means is we will not see the massive drops that we saw after the 2008 stock market, but you also won't capture the very high peaks. I see that my time is up. Thank you so much. We urge you to affirm. Mr. Russell. Thank you. Just a few brief points in rebuttal. I want to start, I think, just where my colleague on the other side ended, to just illustrate how almost impossible this supposed bleeding standard actually is in practice. You heard Intel's counsel say that the way you might identify a benchmark is to look at a fun fact sheet. Well, there are fun fact sheets in the record here. And if you look, they have identified benchmarks that Intel worked with this company called Morningstar to create. And so at least on their theory, you could look at that and you could say, well, here's an appropriate benchmark. As it turns out, these fun fact sheets contain something called a blended or custom benchmark, which is secret. No one outside of Intel's fiduciaries knows what that means. And so on their theory, the only way to survive this pleading standard is to somehow figure that out. But the participants and the beneficiaries have no idea. It's never been disclosed what that custom benchmark looked like. They always meet their customized benchmark, I suppose, right? We don't know, Your Honor. But, I mean, it gives you how the customized benchmark did in these sheets, right? And then it shows. It gives you performance-related information. It doesn't give you any indication about the allocation amounts of different potential investments. That said, at least on some of these fun fact sheets, there was another benchmark that Intel itself, working with Morningstar, identified. For instance, with the GDF, the Global Diversity Fund, there was a separate benchmark that was public. And the plaintiffs in this case identified that benchmark. And they said, this benchmark, Intel fiduciaries themselves have identified it as one of the benchmarks to evaluate the performance of their GDF fund. And for Judge Koh and the district court, even that wasn't enough. In every post-minors case in the Eighth Circuit, which is the first circuit to have adopted this meaningful benchmark standard, when plaintiffs have come forward and identified benchmarks that the defendant fiduciaries themselves have relied on, they have allowed the complaint, at a minimum, to move forward past the pleading stage. That did not happen here. And it shows you just how high this artificially created pleading standard is operating in a case like this one. Unless the court has no further questions. Thank you very much. Thank both counsel for their arguments, and the case is submitted.
judges: BERZON, MILLER, VANDYKE